Case number 21-5301, Daniel Stewart et al. v. Knox County TN et al. Argument not to exceed 15 minutes per side. Mr. Montpelier, you may proceed for the appellant. Good morning, your honors. May it please the court, I am Dale Montpelier and I represent the plaintiff appellants. On the federal claims... What, seven minutes rebuttal, is that correct? Yes, your honor. On the federal claims, your honor, the case was dismissed for the supposed not meeting of the non-jurisdictional 300-day EEOC filing requirement. And the appellants contend that the district judge erred for three reasons. And the first reason, and this is an issue of first impression, the EEOC and the Department of Justice invested 449 days investigating that matter. And the defendant never raised this issue and I would respectfully submit. And again, there's no Court of Appeals opinions on this. But in our country, in our day and age, our taxpayers don't have the resources to have the EEOC and the Department of Justice investigating charges for 449 days. Just to go into U.S. District Court and then two years later have the defendant raise it as a defense. We submit that it's waived. Why wouldn't that be equally on the EEOC or DOJ? I don't disagree. I don't disagree at all. But how could they know if it's never raised to them in the first instance? I don't know what they did during those 449 days. Yeah, but did they check, I mean... I don't know what they did. They get a complaint when they investigate the complaint. I mean, they could just as easily investigate, do a timeline and figure out when everything happened. That's true. And it would be just as easy for the defendant to raise it in their response. Yeah, I mean, I suppose. I'm struggling with this one a little bit because I just don't see any authority for it. And as you say and you admit, I mean... That's it. It comes down to, you know, in this day and age, does the United States have limitless resources to invest into these processes when something could easily be said? But yes, it's an issue of first impression that your honors are going to have to grapple with, and I apologize for that. But I think it is a serious question that deserves to be addressed. The second reason is the letter that's an issue. It did not provide clear notice. It said that my clients would be fired on June 1st, and they weren't fired on June 1st. The letter had a false statement in it. Now, the district judge infers, well, the plaintiffs... Were they basically on notice that their job, that they were going to be terminated? Exactly. The answer is yes. But is it, though? They were going to... Well... In hindsight, it's... But I'm just saying that they were told, basically, you're not going to have your jobs if you want. Then there's a negotiation for other positions in the school district, right? Correct. But it's pretty clear at that point, isn't it, that they're not going to get their old jobs back. I most respectfully disagree. There's a false fact in that letter. You're going to be fired on June 1st. Now, after the fact, years later, with hindsight, we're saying, well, you should have known you should have been fired. How? The fact of the date was wrong. How do we know that them being fired wouldn't be wrong? We're looking at that through the prism of hindsight. But there were... I mean, there's testimony, there's depositions, there's other correspondence. I mean, it seems to all head in one direction, which is you're not coming back to the old job. There doesn't seem to be an expectation they would come back to the old job. They're negotiating for a different job. As you correctly point out, it's not June 1, it's the 14th. But I don't know why that wouldn't... You wouldn't be on notice that... Are you saying that they were sitting there on June 5th thinking, oh, well, maybe I'm not going to be fired? Or I will go back to my old job? Well, yes, because they never had that letter. They didn't get that letter until two years later. Their lawyer had it, and it never came out in the process. Right, but we've imputed the... I mean, I understand it's a fiction, but, I mean, we're kind of beyond that. Right, but you're imputing that knowledge and applying the hindsight that, well, they should have known. From something they never got. To me, that's a double-edged situation there. But that does bring us to the third point. My clients never saw that letter. There's a half a dozen affidavits in the record explaining that they didn't know about the letter and explaining everything I did to get the file from the former attorney. On December 10th of 2018, in a very broad document request, that letter should have been produced. There were a half a dozen people who had that letter. It wasn't disclosed for two years. On October 7th of 2019, I specifically asked for that letter. And it wasn't disclosed for an entire year. And the defendant... They've taken this liberal, laissez-faire approach to the rules in applying the rules of discovery. And it's not appropriate in U.S. District Court, with all due respect. Was there any sanction imposed for delay in producing the letter? Yes, there was. What was the sanction? The sanction... If I may just proceed a little bit here. I had filed a motion for relief. And I gave various bases for relief. The judge granted relief under Rule 37C1. He admitted the evidence, but he awarded me my attorney's fees. My clients got no relief. Yeah. It seems like you're asking for a sanction of somehow to affect the running of the statute of limitations. What you're asking for is a different sanction. I can see where it would appear that way. What I'm asking for is for an equitable exception to be applied. Now, with respect to the sanction, and to quote your Honor... Did you ask the District Court for this equitable exception? I absolutely did. And the District Judge addressed it in a footnote. He glossed over it in a footnote. Well, don't we owe some deference to the District Court's ruling, given that the District Court would have been familiar with the discovery process and what was going on? Normally, absolutely. This is a mixed question of fact and law, which means it's either going to be de novo or abuse of discretion. In this case, the judge didn't have any facts in front of him on which he based the denial of the equitable relief. That's why I say it should be de novo. Now, and to quote an opinion of yours, Judge Nelbandian, in Bissig v. Heim-Werner Cable, you said, The task at the heart of Rule 37c1 is separating honest, harmless mistakes from the type of underhanded gamesmanship that warrants the harsh remedy of exclusion. In this case, the judge didn't exclude it, and that's fine. I mean, he quoted that provision, as I recall, in his opinion. Right. I mean, I don't know. You didn't appeal the failure to exclude, and I think you are probably correct not to do that, because it was an abuse of discretion, and I'm not sure that that would have been successful. So here we are, the document's in the record. I'm not sure what are we supposed to do with that now. Well, the issue is the entirely separate and different issue of the equitable exception. And in this case, the judge didn't. The only fact the judge had in front of him was a declaration of a Mr. Montpelier, your time is up. Would you like to go into your rebuttal time? Yes, I would, Your Honor. Okay. The only thing the district judge had in front of him was a declaration of a defense lawyer that had this statement. The plaintiff didn't ask for the letter. That was a false statement. Yet the judge found that their explanation was believable, if not entirely satisfactory. Well, it couldn't have been believable. There was no explanation. That was not an explanation. That was a false explanation. He had a half a dozen affidavits from the plaintiffs explaining their side why they didn't have a letter. There's nothing in the record explaining why six of the defendants, attorneys, and agents didn't have this letter that was repeatedly requested for years. What this comes down to, he made a clearly erroneous decision. Whether you take it under abuse of discretion or de novo, it was clearly erroneous. He had no facts. It was his gut feeling. That was error. My clients were law enforcement officials. They were standing up for their principles. They were fired under clearly retaliatory circumstances, and now they're being told they get no relief because they were 22 days late based on a false letter that they didn't even know about for years. Your Honors, that's not fair. It's unjust. It's inequitable. And then I'll be back in a moment. Thank you, Mr. Montpelier. Good morning, Your Honors. I'm Houston Havasey. I represent the Knox County Board of Education. I'm an appellee. This is David Wiggler. He's my co-appellee. He represents Knox County, Tennessee. I'll be using 7 minutes of our 15 minutes. I want to begin by pointing out that we inadvertently omitted a United States Supreme Court case from our briefs. We did cite it below. The case is Burlington v. Santa Fe v. White, 548 U.S. 53, 126, Supreme Court 2405. It was published in 2006. We did raise it in the district court at document 191, page ID number 3498 on summary judgment. We learned of its omission when we argued that the plaintiffs had waived an issue on appeal because they had not mentioned a loss in pay. The plaintiffs correctly pointed out in their reply that they did mention it in one sentence of their brief, so I want to bring that to your attention. This case is important because it changed the game in terms of employment cases being about discrimination versus retaliation. There's a completely different standard for what constitutes an adverse employment action in a discrimination case versus a retaliation case. In that case, the Supreme Court held that no longer are we looking at alterations of terms and conditions of employment. We're no longer looking at loss of a job, loss of a pay, something to that effect. We're looking at anything that would deter a reasonable person from engaging in protected activity. That's what constitutes an adverse employment action in a retaliation case. I believe that's important when looking at this record and what the plaintiffs went through so you can determine would a reasonable plaintiff under those circumstances be on clear and definite notice at that time. Each fact as you go through, the district court held it wasn't until May 18th that the clear and definite notice occurred. We respectfully suggest that it was much further before that. They lost their bond cards six months prior to that. No one had worked in the school security department for years. Everyone had been terminated who lost their bond card. You made this argument before the district court? Yes, Your Honor. I cited it exactly where we made it. Was it published? Was it a policy? You're saying nobody had been employed in this position without that bond card. It makes sense to me, I suppose, but is it written down in a policies and procedure manual or something where you would have known, yes, if I don't have this card, I'm done? Painstakingly, Your Honor. We may have put 20 pages of facts in the record to show that. An MOU was entered into between every imaginable government official in 2010. It was passed by county commission as law in 2010. That's in the record. An email was sent to every school security officer saying a change is occurring, now you've got to have bond cards. In 2013, the chief of security was hired saying in his job description it says you have to get all your officers bonded. And he terminated eight people between 2013 and 2015 who either didn't have a bond card or who lost their bond card being revoked by the sheriff. And these plaintiffs were captains. They knew about it. They participated in that occurring. And they all admitted in their deposition testimony that they knew nobody had worked without a bond card for years. What about, okay, so let's go back to the letter for a second. Why was there, what's the discrepancy? Why is there a discrepancy between the date that the letter used and the actual June 14th date? The record is silent to that, Your Honor. But I would point out that in the May 16th letter, the Dupler letter, that you correctly said that it provided clear and definite notice they would be terminated. But it also said that we will negotiate jobs with you. So this issue was not in flux about whether or not they were going to keep their job. The only issue that was in flux was whether or not they were going to take some other lower paying job. The date, I believe, is immaterial under the clear and definite notice standard because in the Delaware State Community College case where a teacher lost tenure, they weren't terminated until a full year later, but the retaliatory act of losing tenure occurred a year prior, that's when the charge filing requirement accrued. Accrual is what's important here. It's the date of the retaliatory act, not when the consequences of that manifestation become painful. To touch on some of the things that my opponent stated, I do want, he says he clearly asked for the letter unequivocally. And if you look at what he cited, he did. But if you look at the very next page of what he cited, there is supreme confusion about this letter. And I want to cite to the record to show you, document 167-7, page ID numbers 1790 through 1791, is the deposition testimony of Tom Cox where Mr. Montpelier asked for the letter. But if you flip to the next page, 1791, he and I spend a full page of a deposition transcript talking about this letter, and we were both very confused. And it's clear we were confused about what we were talking about. But the letter should have been produced, right? We made a mistake. I mean, it should have been in your initial disclosures, right? Absolutely. It should have been the very first thing we relied upon and stamped our foot on, and we just didn't let it. I mean, I don't know what, I mean, under Rule 37, you're supposed to, that evidence is supposed to be excluded unless it's substantially justified or harmless. And I'm, I don't know. I mean, again, the district judge went through the how factors and did everything, so I'm not going to relitigate that. But it just seems like it should have been produced. It wasn't. It gets produced at the end of discovery. Why isn't it a reasonable position to say, hey, look, at least with regard to an equitable estoppel, maybe we should, we shouldn't then use the letter as the key document in terms of precluding these claims completely. We made a mistake, and we're human. You would have to review that under abuse of discretion because, in our opinion, Rule 37C subsumes any type of equity argument. The district court weighed every single factor under Rule 37 that the plaintiffs are asking for you to make. You're saying Rule 37 is essentially the exclusive remedy once the district court decides he's going to give them some money. There's nothing else for him to do. It would be inappropriate for him to use the conduct to grant additional time or whatever it would be under an estoppel theory. Yes, Your Honor, because it would be double dipping, first of all, against us. And then secondly, all of the remedies are available in Rule 37C that they've asked for, and the judge weighed those remedies under the facts and the circumstances and declined to grant anything other than a monetary sanction. And they have not appealed the admissibility of the letter, Your Honor. I see my time is up. Thank you. We ask you to uphold the district court in all respects. Thank you, Mr. Havasey. Good morning. May it please the Court, I'm David Wiggler of the Knox County Bar representing Knox County, Tennessee. The specific provision of Rule 37C that authorized the district court to prohibit the defendants from supporting the defense of statute of limitations was 37B2A2. The district court had that very remedy before it in Rule 37C. To go further than that and adopt a vague equitable remedy on top of that would be double dipping. It's completely subsumed in the statutory, the codification of the equitable principle. The same factors are considered by the district court, the harm, and if I could point out the audacity. I was reading the district court's opinion last night, the final opinion awarding the sanction of $34,000 and the audacity of this appeal. The plaintiffs asked the district court for $210,000 for all of the fees and expenses for the entire case. And they told the district court that they would have stopped litigating if they'd had the letter sooner. That was the justification, according to the district court, for their asking for the entire fees and expenses for the case. They've turned around now, that's document 202, the district court opinion. They've turned around now and tell the court that the letter and the emails, which are very important, it's not just the letter, it's the emails too where their attorney, Mr. Bell, was communicating with the school's attorney, Mr. Dupler, and in those emails it's even more clear that they understood they're not coming back to work and that they're negotiating for other jobs. The record is just replete with that. There clearly was a clear notice of a cause of action outside the 300 days. And they recognize that in seeking $210,000 in fees and expenses and turn around now and take the opposite position. If equitable estoppel was to apply to an argument, it would apply against the plaintiffs here. Having asked for a greater relief, being denied that relief, they should be estopped. Intent. It's not like your client has unclean hands, though. I mean, you're sitting there calling them audacious, and I suppose you can call them whatever you want, but it seems like it's a document that should have been produced, and I'm still curious why. I mean, you seem unapologetic about it, and that's fine, but I think you're lucky not to have had that. If it were me, I think I would have excluded this document, and I'm not sure I wouldn't have granted a monetary sanction too. You've got to produce the documents, the key documents in the case. I understand there's a lot of stuff going on. They should have had it. Obviously, it was their lawyer. I mean, there's a lot going on, the factors. We weigh them, and we do all this stuff. It's just, I mean, here we are on appeal, and we're talking about a document that, I mean, it looks like the key document in the case, where it was, and that it was the same thing I've seen in other cases too. It's frustrating. It's like we've got key documents, and why are they not coming out at the beginning of the case so we can get them resolved quickly? Maybe this case would have been resolved easily. I don't know. I mean, yes, $210,000 seems extreme, but, you know, exclusion is your other option. I'm not sure you'd want that. Josh, we were very apologetic. We immediately brought our error to the court's attention. We admitted negligence, but to go beyond negligence and imagine intentionally withholding these documents that the plaintiffs call litigation ending or ostensibly litigation, what motive could we possibly have had? No, I agree with that. I mean, that was the same issue in BISIG. I mean, the document only helps you. Right. Absolutely. And it seems odd that you, I don't know that you would have been playing games because it wouldn't have helped you at all. And beyond that, we would have had no reason to foresee that these plaintiffs would later say they'd never received it from their own lawyer. I mean, if we had the document in our possession and knew about it, we would have assumed that they already had it. We would have designated it an initial disclosure. What about this June 1 versus June 14 question? Completely insignificant. Completely. The question is whether they were on clear and definite notice. Yeah, I mean, but the question is, I mean, the letter, if June 1, it seems like June 1 is the date, then it turns out that June 14 is not the date. Is it possible then that firing was also in there, but then maybe firing is not on the table? They're deemed to have received the letter that included the letter from the sheriff refusing to reinstate their bond cards. Under the overwhelming, undisputed evidence, any reasonable person would have known that they're not going to get those jobs back, and they admit that they were negotiating for jobs that paid less, teaching assistant jobs. They admit that. There's no evidence in the record from which a reasonable jury could find that they had any expectation or hope of getting their original jobs back. If you applied their conclusory statements, we had hope, then you never have the clear and definite notice anymore. All the plaintiff has to do is say, well, I still had hope. I had this letter saying I was going to be terminated. I mean, even they would admit that by June 14, they had no hope, right? I don't know. I mean, that seems to me, yes, I hear your point, but in this case, it's just a matter of saying it's the 14th versus the 18th, May or whatever, which I understand is highly consequential, of course. But you could pick a date. It could be June 14. By that argument, then the cause of action accrued on May 18th and unaccrued on June 1 when they were still negotiating for jobs and they got the courtesy of a few more days of pay. It unaccrued at that point and then reaccrued on June 14. I just don't think that's a reasonable construction that a jury could find, that the delay while they're negotiating for other jobs, that that gave them any hope they would get their original job back. And again, under the case law, the retaliation claim was complete at the point that a reasonable person would be deterred from engaging in protected activity, not a cut in pay. The retaliation was complete at least by May 18th when they knew they weren't going to get that original job back. They knew they weren't going to wear a gun and a badge and a uniform in the Knox County schools any longer. Why didn't you tell the EEOC and DOJ that they were out of time? We didn't have the letter. You didn't know that the EEOC was investigating? Well, we still don't know. The record doesn't show that the EEOC did anything to investigate the case. That's an assumption that something was going on. The plaintiff certainly never asked during that period of time for a right to sue letter which could have ended the investigation while their state claim was pending. That's the other issue. Did you know that, I assume you knew that they had gone to the EEOC, right? Oh, yes. As a general matter. So you knew that this was going to be an issue. Your colleague says, well, we don't even need the letter because everybody knew that once you lost the bond credential, you were out. So there was a timing problem on steroids. It goes back to January, whatever. You didn't tell the EEOC, hey, these guys, this is crazy. They knew back in January. We have not foreseen that argument ever. The only courts that have addressed it are district courts and unanimously they've rejected the requirement that the employer raise an affirmative defense before the EEOC. That's been unanimously rejected by the district courts that have considered it. So there's been no notice to employment lawyers representing defendants that they have to. Yeah, I mean, I guess I don't disagree with that. Obviously, your friend on the other side admits that it's kind of a novel argument. But I'm just curious why you wouldn't say to the government, hey, by the way, you guys are wasting your time. This thing is dead on arrival. It just would help your client, wouldn't it? Often it's not even lawyers that respond to these EEOC charges. In our case, we had a different attorney who's not here, not our litigation lawyer, who responded to the EEOC and what he was thinking and what he went through. Thank you. Thank you, Mr. Wiggler. Thank you. Can I answer your question that you asked, Mr. Wiggler? You made a comment, and actually I think this slipped by the district judge, too, because he also said it. And you expressed an opinion that that letter only helps the defendant, and that's not true, Your Honor. And the reason is that letter is dated the same day as the investigation report and their complaint. It's strong evidence of pretext. And the easiest way to avoid discovery on that critical fact, hold the letter until discovery closes, which is what happened. We made a mistake. That's what I just heard. I also heard that this was negligence. There's not one sworn statement in the record showing that this was a mistake or that it was negligent. I mean, it's kind of a sideshow, and I regret kind of getting into the sideshow a little bit here. But why does that lead to this equitable estoppel? Their argument is, look, Rule 37 is what it is. You get exclusion, you get a sanction, you get whatever it is. Correct. Why is there anything else that you can get as a sanction? Because they're two totally different animals. They're two totally different animals. But is there any authority for this? Like, where is this coming from? Well, the Brown case says that there are equitable exceptions. So let's say we never had the Rule 37 issue to begin with. I'd still have a right to ask for the equitable exception. It just so happens that this is so egregious of a case, I have both. He granted a sanction under Rule 37, but he didn't address the equitable exception under Brown. He glossed over it in a footnote. Now, an argument that was raised here, and what we're discussing now, is that Rule 37 subsumes equitable exceptions, wasn't raised to the district court, wasn't briefed in their appellate brief. They're two totally different concepts. I guess I would push back on that a little bit. I mean, you have something that, in some sense, I use preemption language, occupies the field. I mean, I don't know why it wouldn't be that Rule 37 would kind of occupy the field in this area. That issue is not on appeal. I mean, literally, it was not briefed. I think equitable exception, though, to me, would imply that it adversely affected the conduct of your client. It did. And your client didn't do anything differently because of their not having produced the letter. What it did was it caused you to litigate, I guess. Is that what you're saying? Because they litigated the case. But normally, equitable exception is something that happens before the filing of a complaint. It's something that you've done in reliance on something that the other side did. Well, and, Your Honor, I grapple with that myself in writing this. That's equitable tolling and equitable to stop. It usually happens before. This just happened to happen in the case. But the case law speaks of fairness. But the fact that it happened in the case, I think, pushes this towards this preemption argument, which is that once you're in the court, it's really the sanction. You have to get a sanction from the district judge, one way or the other, on what you're trying to get. And if you don't get it, you don't get it. I mean, you didn't get it here. And you're asking us now to essentially impose a sanction. Well, no. We want you to grant the exception, saying that that defense is just not applicable, that the 22 days is forgiven. Yes, Your Honor, I do. Because, again, it's completely different. And they didn't even brief that to Your Honors. It's not in the response brief. It's a one-line statement. I haven't had a chance to reply to that at all. It would be unfair to decide this case on that basis. Respectfully. So, yes, my client spent a lot of money on this case to be handed this letter at the end of the game. It's just inequitable, incredibly inequitable. And the district judge, again, he had no facts in front of him. He had a declaration with a statement that was false. So there's not much more. I can beat this to death, Your Honor, but I don't want to waste your time or these good people's time. It's fully briefed. I hope you see it my way. Okay. Thank you, Mr. Monk. Thank you. Thanks to counsel from both sides. We'll take the case under submission. The court may adjourn. The clerk may adjourn the court, please.